**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SMS Financial NCU, LLC,** | ) | **Case No. 1:25–CV–00812–DCN** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE DONALD C. NUGENT** |
| **v.** | ) | |
| | ) | |
| **Zdenko Zovkic, et al.,** | ) | **Findings of Fact and** |
| | ) | **Conclusions of Law** |
| **Defendants.** | ) | |

This matter is before the Court on Plaintiff SMS Financial NCU, LLC's ("SMS") request to void the transfer of a home from Zdenko Zovkic to his former wife, Lisa Zovkic, following the execution of a *Separation Agreement*. Plaintiff filed suit under the Ohio Uniform Fraudulent Transfer Act and seeks to recover the proceeds Lisa Zovkic obtained from selling the home and use them to satisfy a debt owed by her ex-husband.

## Facts

The Court held a bench trial on November 20, 2025. Plaintiff called Robert Stewart, General Counsel for SMS Financial, and Lisa Zovkic. Both parties rested and filed supplemental briefs on December 5, 2025.

At issue in this case is whether SMS Financial can recover Lisa Zovkic's proceeds from the sale of her marital home to satisfy a debt owed by her ex-husband, Zdenko Zovkic. Lisa's

– 1 –

former husband is a restaurateur and accumulated substantial debt managing his businesses. He owed the sum to National Credit Union ("NCU") and entered into a *Settlement Agreement and Mutual Release* with NCU on May 23, 2014. (ECF #23, *Stipulations of Fact*, p.1 ¶ 1). NCU later assigned the loan to SMS Financial. (TR, p.3 lns. 22–25).

On July 14, 2014,[1] Lisa and Zdenko married, and, on March 25, 2015, Mr. Zovkic purchased a home located at 4240 Giles Road, Moreland Hills, Ohio 44022 ("home," "property," "residence"). (ECF #23, *Stipulations of Fact*, p.1 ¶ 2–3). He took out a $417,000 note to buy the home and secured the note with a mortgage. (Joint Exhibit 3A, *March 25, 2015 Mortgage*). Initially, only Mr. Zovkic appeared on the mortgage deed. (*Id.*). He appeared as a married man without reference to Lisa. (*Id.*). The mortgage deed was later amended and rerecorded on April 9, 2015, to include Lisa by name as his wife. (Joint Exhibit 3B, *April 9, 2015 Rerecorded Mortgage*).

On July 27, 2021, Mr. Zovkic entered into a *Forbearance Agreement* with SMS. (Joint Exhibit 4, *Forbearance Agreement*). SMS agreed not to exercise any of its rights under the 2014 *Settlement Agreement* so long as Mr. Zovkic did not default on his $1,708.33 monthly payment. (Joint Exhibit 4, 4-2, *Forbearance Agreement*). He did. SMS notified Mr. Zovkic of his defaults under the agreement on several occasions between March 16, 2022, and March 12, 2024. (ECF #26, *Plaintiff's Trial Brief*, p.3). At one point, SMS alleges that Mr. Zovkic stopped contacting them altogether.

On April 1, 2024, Zdenko and Lisa terminated their marriage and signed a *Separation Agreement* with a *Shared Parenting Plan*. (ECF #23, *Stipulations of Fact*, p.2 ¶ 6). During the

---

[1] The parties jointly stipulated that Mr. and Mrs. Zovkic were married on June 12, 2014. (ECF #23, *Stipulations of Fact*, p.1 ¶ 2). However, Mrs. Zovkic testified that the two were married on July 14, 2014. (TR. p.38 ln. 18). The Court accepts the date provided by Mrs. Zovkic.

proceedings, Mr. Zovkic was represented by counsel, and Lisa Zovkic was not. (Joint Exhibit 5-4, *Petition for Dissolution*). As part of the *Separation Agreement*, the home was transferred entirely to Lisa Zovkic, the relevant portion provides:

> "Said real property is encumbered by a mortgage lien in favor of Roundpoint Mortgage. Said mortgage lien is in Husband's sole name. The parties hereby warrant that other than said mortgage lien, neither has caused or allowed any lien(s) to be placed upon said real property, and that neither shall allow any further lien(s) to be placed thereon, and to the extent that any such liens are found to exist, then the party responsible for the creation of such lien(s) shall be solely responsible for immediate payment and release of the same, and that party shall indemnify and hold the other party absolutely harmless thereon. While said real property is currently titled to both parties, except as otherwise provided herein, all equitable and legal title will be transferred to Wife by Husband, and shall hereafter be held by Wife, free and clear of any claim of Husband. Husband shall, within (5) business days of the parties' mutual execution of this Separation Agreement, convey to Wife by Quit Claim Deed all his right, title and interest in and to said real property. Wife shall thereafter be responsible for and pay all monthly payments and other sums due relative to said mortgage lien in favor of Roundpoint Mortgage, real estate taxes, and all other expenses relative to said real property, and she shall indemnify and hold Husband absolutely harmless thereon.
>
> Upon her receipt of title from Husband, Wife shall offer said real property for sale and shall use her absolute best efforts to sell the same and remove Husband as an obligor on the Roundpoint Mortgage lien currently encumbering said real property."

(Joint Exhibit 6-2–6-3, *Separation Agreement*). Historically, while married, the couple filed their taxes separately and had independent bank accounts. (TR, p.46 lns. 6–13). He paid the mortgage, and she covered household expenses. (TR, p.37 lns. 9–11, p.54 ln. 25, p.55 ln. 1).

## Stipulation of Facts and Exhibits

The parties have stipulated to the following facts:

1. On May 23, 2014, Zdenko Zovkic, Scene Restaurants, Inc., Zmin, LLC, and C.C. Restaurants, Inc., on the one hand, and the National Credit Union Administration

Board, acting in its capacity as Liquidating Agent of St. Paul Croatian Federal Credit Union, on the other hand, entered into a *Settlement Agreement and Mutual Release*.

2. Zdenko Zovkic and Lisa Zovkic were married on July 14, 2014.

3. On March 25, 2015, Zdenko purchased the property located at 4240 Giles Road, Moreland Hills, Cuyahoga County, Ohio, and M Monty S. GR Enterprises, LLC, conveyed a General Warranty Deed to Zdenko Zovkic and Lisa Zovkic.

4. To secure payment of the loan for the purchase of the Giles Road property, Zdenko and Lisa signed a mortgage deed, which was recorded on March 25, 2015. Subsequently, on April 9, 2015, the *Mortgage* was rerecorded to add Borrower Name and Marital Status.

5. On July 27, 2021, SMS Financial NCU, LLC, and Zdenko Zovkic entered into a *Forbearance Agreement*.

6. On April 1, 2024, Zdenko and Lisa Zovkic signed a *Separation Agreement* and *Shared Parenting Plan* (with an attached *Child Support Computation Worksheet*), which was included as part of the *Petition for Dissolution of Marriage* filed on April 3, 2024, with the Cuyahoga County Domestic Relations Court, *In re Marriage of Zdenko Zovkic and Lisa Zovkic*, Case No. DR 24 399076.

7. On April 1, 2024, Zdenko executed a *Quit-Claim Deed* to Lisa, transferring his interest in and to the Residence, which was recorded on April 3, 2024.[2]

8. On May 7, 2024, a *Judgement Entry of Dissolution* was entered by the Cuyahoga County Court of Common Pleas, Domestic Relations Division.

9. During their marriage, Lisa Zovkic filed her federal income tax returns separately from Zdenko Zovkic, as head of household.

10. On May 21, 2024, Lisa Zovkic listed the Residence for sale. The initial listing price was $799,000. The listing price was reduced to $749,000 on July 7, 2024, and to $699,000 on July 19, 2024.

11. On July 16, 2024, SMS filed a *Stipulated Judgment* against Zdenko Zovkic.

12. On July 17, 2024, a *Stipulated Judgment* against Zdenko Zovkic was signed by Judge Dan Aaron Polster.

---

[2] In the *Stipulations of Fact* submitted jointly by the parties, they list the date of execution for the *Quit-Claim Deed* as April 3, 2025. (ECF #23, *Proposed Stipulation of Fact*, p.2 ¶ 7). However, the *Quit-Claim Deed* reflects it was executed on April 1, 2024, and recorded on April 3, 2024. (Joint Exhibit 8-2, *Quit-Claim Deed*). The Court adopts the dates found in Joint Exhibit 8-2 over the dates submitted in the *Proposed Stipulation of Fact*.

13. On October 15, 2024, title to the Residence was conveyed by Lisa Zovkic to Rada Popova and Mathew Molk. The Giles Road property sold for $650,000.

14. The mortgage payoff was $411,751.05, and a *Release of Mortgage* was filed.

15. Per the *Settlement Statement* prepared upon the conveyance of the Giles Road Property, were noted a judgment lien of $11,806 filed by the state of Ohio against Zdenko Zovkic, Cuyahoga County Common Pleas Case No. JL 20–005557; a mechanic's lien for $2,160 filed by Gornik's Landscaping LLC against Zdenko Zovkic, recorded with the Cuyahoga County Recorder as Document No. 202008270406; and county taxes of $11,002.71.

16. Other charges incurred from the sale of the Giles Road property were closing costs ($31,841.99), owner's policy ($1,300), water and sewer ($200), and county taxes ($11,002.71), totaling $44,344.70, one-half of which is $22,172.35 and would be attributable to Lisa Zovkic.

17. The liens and charges were satisfied from the proceeds of the sale of the Giles Road property.

18. Lisa received net proceeds of $177,438.25 from the sale of the Giles Road property.

19. There is diversity of citizenship between Plaintiff and all Defendants.

20. Plaintiff's claim exceeds $75,000.

21. The matter is properly venued in this District as Lisa Zovkic resides within the territorial jurisdiction of the Court.

(ECF #23, *Stipulations of Fact*). In addition, the parties have filed Joint Exhibits, which include:

1. **Joint Exhibit 1** —— Settlement Agreement
2. **Joint Exhibit 2** —— General Warranty Deed
3. **Joint Exhibit 3A** — March 25, 2015, Mortgage
4. **Joint Exhibit 3B** — April 9, 2015, Rerecorded Mortgage
5. **Joint Exhibit 4** —— Forbearance Agreement
6. **Joint Exhibit 5** —— Petition for Dissolution
7. **Joint Exhibit 6** —— Separation Agreement
8. **Joint Exhibit 7** —— Shared Parenting Plan

9.  **Joint Exhibit 8** —— Quit-Claim Deed

10. **Joint Exhibit 9** —— Judgment Entry of Dissolution

11. **Joint Exhibit 10** — Sale History Report

12. **Joint Exhibit 11** — July 16, 2024 Stipulated Judgment Entry

13. **Joint Exhibit 12** — July 17, 2024 Stipulated Judgment

14. **Joint Exhibit 13** — Final Closing Disclosure Statement

15. **Joint Exhibit 14** — Release of Mortgage

16. **Plaintiff's Exhibit 15** — Email Chains

17. **Plaintiff's Exhibit 16** — Defendant Lisa Zovkic's Answers to Discovery Requests

18. **Plaintiff's Exhibit 17** — Email Communications Containing Zdenko Zovkic's Personal Financial Statements

### Stipulation of Disputed Facts

Plaintiff and Defendant filed a *Joint Statement of Disputed Facts*. They are as follows:

1.  Whether the debtor, Zdenko Zovkic, retained possession or control of the Giles Road property after the transfer.

2.  Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit.

3.  Whether the transfer was of substantially all the assets of the debtor.

4.  Whether the debtor absconded.

5.  Whether the debtor removed or concealed assets.

6.  Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

7.  Whether the debtor was insolvent or became insolvent shortly before or after the transfer was made or the obligation was incurred.

(ECF #28, *Joint Statement of Disputed Facts*).

–6–

**Applicable Law**

Plaintiff filed suit under the Ohio Uniform Fraudulent Transfer Act, Chapter 1336. The two types of transactions addressed in Chapter 1336 are "actually fraudulent transfers" under R.C. § 1336.04(A)(1) and "constructively fraudulent transfers" outlined in R.C. § 1336.04(A)(2) and § 1336.05(A) and (B).

An "actually fraudulent transfer" under R.C. § 1336.04(A)(1) is one made with "actual intent to hinder, delay or defraud any creditor of the debtor." Because it is difficult to prove actual intent under § 1336.04(A)(1), provision (B) permits the court to consider circumstantial factors indicative of fraud known as "badges of fraud." On the other hand, "constructively fraudulent transfers" do not require proof of the debtor's intent. Proof of a constructively fraudulent transfer lies in the financial impact of the transaction.

Initially, Plaintiff brought its action as a "constructively fraudulent transfer" under R.C. § 1336.05(B). (ECF #1, *Complaint*, p.6 [PageID #6]). However, Plaintiff dropped that argument entirely and adopted a new one attempting to prove an "actually fraudulent transfer" under R.C. § 1336.04(A)(1). Plaintiff did so without formally amending its *Complaint*. Ordinarily, "arguments not raised in a party's opening brief . . . are waived." *In re Burke*, 863 F.3d 521, 528 (6th Cir. 2017) (quoting *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013)). However, in certain circumstances, an issue not raised in the pleadings may be raised by the express or implied consent of the parties. *Yellow Freight System, Inc. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992). Federal Rule of Civil Procedure 15(b)(2) provides:

> ***For Issues Tried by Consent.*** When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

An issue is deemed tried by consent if the "issue is tried fully by the parties." *Yellow Freight Systems*, 954 F.2d at 358. When "an issue is tried fully by the parties, a court or agency may base its decision on that issue and may deem the pleadings amended accordingly, even though the parties did not set forth the theory in the pleadings. This rule is designed to allow parties . . . to get to the heart of the matter and not have relevant issues obscured by pleading niceties. It was not designed to allow parties to change theories mid-stream." *Id.*

The Court finds that Plaintiff's adoption of an argument under R.C. § 1336.04(A)(1) was not done in an attempt to change theories mid-stream. Rather, it was tried with the implied consent of Defendant. Plaintiff gave Defendant notice by raising the unpleaded argument several times prior to the bench trial. Plaintiff did so for the first time on November 10, 2025, when it filed its *Proposed Findings of Fact and Conclusions of Law to Avoid and to Recover Transferred Property or the Value of the Transferred Property*. (ECF #22, p.7–8 ¶ 36–37). Defendant included the unpleaded argument in her *Proposed Findings of Fact and Conclusions of Law* filed on the same day and addressed several of the "badges of fraud" required to prove an actually fraudulent transfer under R.C. § 1336.04(A)(1). (ECF #24, p.8 ¶ 52–53). Defendant mentioned the argument again in both her pre-*Trial Brief* and her *Post-Trial Supplemental Brief*. (ECF #25, *Trial Brief Filed by Lisa Zovkic*, p.8–9), (ECF #31, *Supplemental Trial Brief filed by Lisa Zovkic*, p.7, 8 n.5).

Further, both parties agreed to file a *Joint Statement of Disputed Facts*, which discusses, verbatim, the badges of fraud listed under R.C. § 1336.04(B), which are central to establishing intent for an actually fraudulent transfer under R.C. § 1336.04(A)(1). (ECF #28, *Joint Statement of Disputed Facts*). In addition, at the beginning of the bench trial, Mr. Cuppage, on behalf of Plaintiff, explicitly stated that the legal basis for the action was "set forth in Ohio's adoption of

– 8 –

the Uniform Fraudulent Transfer Act and . . . specifically, § 1336.04(A)(1)." (TR, p.7 lns. 12–15). Mr. Cuppage then proceeded to list off the various badges of fraud SMS intended to prove. (TR, p.7 lns. 16–17). Accordingly, the Court finds that Plaintiff's argument under R.C. § 1336.04(A)(1) was tried with the implied consent of Defendant and that Plaintiff waived its argument under R.C. § 1336.05(B) by failing to pursue it.

### Ohio Revised Code § 1336.04(A)(1)

Under Ohio law, a transfer can be voided if it was made with the "actual intent to hinder, delay, or defraud any creditor of the debtor." R.C. § 1336.04(A)(1). A plaintiff must establish the debtor's intent by clear and convincing evidence. *Blood v. Nofzinger*, 2005-Ohio-3859, ¶ 36 (Ohio App. 6th Dist. July 29, 2005). Direct evidence of fraudulent intent is not required. *Reinbolt v. Kern*, 2013-Ohio-1359, ¶ 40 (Ohio App. 6th Dist. April 5, 2013). "Actual fraudulent intent may be established by demonstrating 'badges of fraud.'" *Id.* The "badges of fraud" are statutorily defined in R.C. § 1336.04(B). They include, but are not limited to, the following:

1. Whether the transfer or obligation was to an insider;

2. Whether the debtor retained possession or control of the property after the transfer;

3. Whether the transfer or obligation was disclosed or concealed;

4. Whether before the transfer was made or the obligation was incurred the debtor had been sued or threatened with suit;

5. Whether the transfer was of substantially all of the assets of the debtor;

6. Whether the debtor absconded;

7. Whether the debtor removed or concealed assets;

8. Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the assets transferred or the amount of the obligation incurred;

9. Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10. Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

11. Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

In order to find a transfer fraudulent under R.C. § 1336.04(A)(1), "a complaining party is not required to demonstrate the presence of all badges of fraud; as few as three badges have been held to constitute clear and convincing evidence of actual fraudulent intent." *Blood v. Nofzinger*, 2005-Ohio-385 at ¶ 49. "Once the burden has shifted, a defendant may rebut the presumption of fraud if he or she can demonstrate that the transfer was made in good faith and that 'reasonably equivalent value' was paid by the transferee." *Id.* at ¶ 50.

### Analysis Under R.C. § 1336.04(A)(1)

The parties agree that Lisa Zovkic is an insider by virtue of her marital relationship with Zdenko Zovkic, which is sufficient to establish the first badge of fraud. R.C. § 1336.04(B)(1), (ECF #25, *Trial Brief Filed by Lisa Zovkic*, p.7), (ECF #31, *Supplemental Trial Brief filed by Lisa Zovkic*, p.8 n.5), (ECF #26, *Trial Brief Filed by SMS Financial*, p.7). The Court will now evaluate the additional badges of fraud.

    *i.* *Whether the debtor retained possession or control of the property after the transfer.* R.C. § 1336.04(B)(2).

Mrs. Zovkic testified that Mr. Zovkic continued to live with her at the home after the dissolution documents were filed and the home was quit-claimed to her on April 3, 2024, until the home was sold that October. (TR, p.52 lns. 15–21). This alone establishes possession, and the

Court finds that Mr. Zovkic retained possession of the property after the transfer. *Langaa v. Pauer*, 2005-Ohio-6296, ¶ 41 (Ohio App. 11th Dist. Nov. 25, 2005).

> *ii. Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit.* R.C. § 1336.04(B)(4).

Evidence was presented indicating that Mr. Zovkic received notice of a potential lawsuit to be filed against him through his attorney in March of 2024, about one month before the home was quit-claimed to Mrs. Zdenko. (Plaintiff's Exhibit 15, *Email Chains*). A series of emails illustrates Mr. Zovkic's awareness of the potential lawsuit. (*Id.*). On March 12, 2024, Mr. Cuppage, representing SMS, wrote to Mr. Zovkic's attorney expressing that SMS had an interest in negotiating with Mr. Zovkic. (*Id.*). The email stated, "I understand that SMS is prepared to negotiate a [redacted], to avoid our Judgment being Entered . . . Please let us know if this is acceptable to Zdenko," to which Mr. Zovkic's attorney responded, "I shared this with Zdenko and will let you know what I learn." (*Id.*). The Court finds this sufficient to prove that prior to the transfer, Mr. Zovkic was threatened with suit. *See UAP-Columbus JV326132 v. Young*, 2010-Ohio-485, ¶ 31 (Ohio App. 11th Dist. Feb. 16, 2010) (finding evidence that Plaintiff's attorney mailed Defendant a letter identifying breaches of lease and stating it would pursue collection if breaches were not cured sufficient to prove Defendant was threatened with suit).

> *iii. Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.* R.C. § 1336.04(B)(8).

The Ohio Uniform Fraudulent Transfer Act holds that "value" is given in an exchange if "property is transferred or an antecedent debt is secured or satisfied." R.C. § 1336.03(A). "The critical time to determine whether a debtor receives reasonably equivalent value is [at] the time of the transfer." *In re Grove-Merrit*, 406 B.R. 778, 805 (Bankr. S.D. Ohio 2009) (citing *In re*

*Chomakos*, 69 F.3d 769, 771 (6th Cir. 1995)). "Whether consideration supporting a challenged transfer is reasonable must be determined from the standpoint of the debtor," in this case, Zdenko Zovkic. *Id.*

Both parties improperly focus their value inquiry on Mrs. Zovkic. Plaintiff argues that "Lisa transferred nothing to Zdenko," "Lisa paid nothing for the transfer," "[Lisa] received $177,000 and did not pay Zdenko anything." (ECF #30, *Supplemental Brief and Closing Argument Filed by SMS Financial*, p.5). Defendant does largely the same: "Lisa paid value when acquiring her husband's one-half interest, which makes the transfer non-fraudulent." (ECF #31, *Supplemental Trial Brief Filed by Lisa Zovkic*, p.2). Despite this, the key inquiry is whether *Mr. Zovkic* received reasonably equivalent value in the transfer.

Defendant argues that Mrs. Zovkic agreed to "assume payment of the balance of Zdenko's loan (over $400,000)," and that, as part of the *Separation Agreement*, she became "responsible for the payment of the balance of the loan secured by the mortgage." (ECF #25, *Trial Brief Filed by Lisa Zovkic*, p.3–4). Further, that Mr. Zovkic benefitted from the transaction because he was "relieved of $472,000+ [in] debt." (ECF #31, *Supplemental Trial Brief Filed by Lisa Zovkic*, p.11). Defendant's use of the language "assume" and "relieved" in connection with the mortgage improperly skews the substance of the *Separation Agreement* by suggesting that it formally discharged Mr. Zovkic's responsibility under the mortgage. It did not.

The *Separation Agreement* made Mrs. Zovkic "responsible for . . . all monthly payments and other sums due relative to said mortgage lien in favor of Roundpoint Mortgage, real estate taxes, and all other expenses relative to said real property," and obligated her to "indemnify and hold [Mr. Zovkic] absolutely harmless thereon." (Joint Exhibit 6-3, 6-4, *Separation Agreement*). A hold harmless provision contained in a dissolution of marriage does not alter the existing

liability running to third parties. *In re Williams*, 398 B.R. 464, 469 (Bankr. N.D. Ohio 2008). Rather, it "creates a 'new' debt, running solely between the former spouses." *Id*. As a result, the indemnification provision did nothing to alter Mr. Zovkic's obligation under the mortgage. His contractual liability under the mortgage remained until October 15, 2024, when the property was sold, and the *Release of Mortgage* was filed. (Joint Exhibit 14, *Release of Mortgage*).

In exchange for the transfer, Mr. Zovkic was not relieved of his obligation under the mortgage; however, he was indemnified on it. An indemnification provision can be seen as a form of value because it eliminates a contingent liability. *In re Bulmer*, Case No. 15–3116–RLM–7A, 2017 WL 562436, at *5 (Bankr. S.D. Indiana Feb. 10, 2017). However, the "agreement is subject to valuation." *Id*.

In this case, the indemnification provision would protect Mr. Zovkic if Mrs. Zovkic failed to pay the mortgage or if the mortgage payoff price exceeded the sale price of the home. Mrs. Zovkic listed her gross annual income as $130,000, minimizing the risk that she would default on the mortgage. (Joint Exhibit 9-34, *Child Support Computation Worksheet*). Further, Mrs. Zovkic testified that, at the time of the transfer, she knew there was equity in the home. (TR, p.48 lns. 18–25, p.49 lns. 1–2). Her belief was realized when the sale price of the home exceeded the mortgage payoff by roughly $177,000. In either case, the contingencies covered by the indemnification provision were unsubstantial: Mrs. Zovkic was likely to pay the mortgage, and the sale price of the home was likely to exceed the mortgage payoff. Accordingly, the Court finds that Mrs. Zovkic's indemnification of Mr. Zovkic on the property is not reasonably equivalent value for his interest in the home.[3]

---

[3] The Court recognizes that Defendant argues that a state tax and mechanic's lien were taken out on the property by Mr. Zovkic. With respect to the mechanic's lien, it was levied against the property by a landscaper, Gornik's Landscaping, for $2,160. (ECF #31, *Supplemental Trial Brief filed by Lisa Zovkic*, p.5). The state tax lien filed by the state of Ohio against Mr. Zovkic was for $11,806. (ECF #25, *Trial Brief Filed by Lisa Zovkic*, p.4) (citing *State*

> *iv. Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.* R.C. § 1336.04(B)(9).

The parties disagree as to whether Zdenko was insolvent at the time of the transfer. Under R.C. § 1336.02(A)(2) "[a] debtor who generally is not paying his debts as they become due is presumed to be insolvent." Despite this, courts typically require evidence that the debtor has failed to pay multiple creditors. "Evidence that a debtor failed to pay some debts is not sufficient to prove that he is *generally* not paying his debts and, thus, will not give rise to a presumption that the debtor was insolvent at or near the time of the alleged fraudulent transfer." *In re Stanley*, 384 B.R. 788, 808 (Bankr. S.D. Ohio Mar. 28, 2008) (emphasis added) (*see also In re Unglaub*, 332 B.R. 303, 318 (Bankr. N.D. Illinois Oct. 24, 2005) (holding single demand letter of $1,379,085.42 insufficient to establish that debtor was generally not paying his debts as they became due)).

The Ohio Courts, however, have recognized both equitable and balance sheet tests for insolvency. Under balance sheet insolvency, "a debtor is insolvent when the debtor's liabilities exceed the debtor's assets, excluding the value of preferences, fraudulent conveyances and exemptions." *In re Gabor*, 280 B.R. 149, 160 (Bankr. N.D. Ohio Mar. 14, 2002). The test for equitable insolvency provides that:

> "It [the definition of insolvency under section 1336 *et seq.*] also includes the debtor, who, although presently meeting his obligations as they become due, has incurred unmatured debts to such an extent that it is apparent he will not be able to meet them when they become absolute and matured. This is determined by considering the present 'fair and salable value' of his assets, and comparing that with the amount of his probable liability on his existing debts as they become absolute and matured."

---

*of Ohio Dept. of Taxation v. Zdenko Zovkic*, Case No. JL–20–005557 (Ohio Cuyahoga Cnty Dec. 28, 2020)). Whether, through the *Separation Agreement*, Mr. Zovkic was indemnified or released from obligations totaling $13,966, such a figure cannot be considered reasonably equivalent value for equity in a home of roughly $177,000.

(*Id.*) Although Mr. Zovkic's *Financial Statement* was prepared in 2021, it shows that he spent considerably more than he earned. (Joint Exhibit 17-3, 17-4, *Personal Financial Statement*). Further, the *Judgment Entry of Dissolution* reflected that he made $30,000 in 2024. (Joint Exhibit 9-34, *Child Support Computation Worksheet*). This, in combination with the size of the debt and his inability to make the monthly payments on the *Forbearance Agreement*, is sufficient for the Court to find Mr. Zovkic insolvent at the time of the transfer.

> v. *Whether the transfer was of substantially all the assets of the debtor.* R.C. § 1336.04(B)(5).

The Court cannot find that at the time of the transfer, the Giles Road Property constituted substantially all of Mr. Zovkic's assets. Neither SMS nor Mrs. Zovkic provided documentation indicating Mr. Zovkic's assets. All the Court has before it is a basic and difficult-to-read *Financial Statement* signed by Mr. Zovkic from 2021 and the 2024 *Separation Agreement*. (Plaintiff's Exhibit 17, *Email Communications*). The *Separation Agreement* allowed Mr. Zovkic to retain a Huntington checking account, a 2023 Chevrolet Tahoe leased in his name, and a series of household items. (Joint Exhibit 6-3, 6-4, *Separation Agreement*). However, SMS presented no evidence of the cumulative value of these assets. Accordingly, the Court cannot find that the transfer was of substantially all of Mr. Zovkic's assets.

> vi. *Additional badges of fraud.*

Plaintiff has not presented sufficient evidence to establish either that the debtor absconded or that he removed or concealed assets. Mrs. Zovkic testified that they filed their taxes separately and that he moved to Miami, Florida, at some point after the termination of their marriage. (TR, p.46 lns. 4–13, p.52 lns. 9–21). Neither of which is sufficient for the Court to find he absconded or hid assets.

**Affirmative Defense Under R.C. § 1336.08(A)**

Plaintiff has proven the existence of five badges of fraud and established the presumption of an actually fraudulent transfer under R.C. § 1336.04(A)(1). *Blood v. Nofzinger*, 2005-Ohio-3859, ¶ 49 (Ohio App. 6th Dist. July 29, 2005) ("[A]s few as three badges have been held to constitute clear and convincing evidence of actual fraudulent intent."). At this point, the burden shifts to Defendant who may avail herself of the defense under R.C. § 1336.08(A), which provides that "[a] transfer or an obligation is not fraudulent under division (A)(1) of section 1336.04 of the Revised Code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." R.C. § 1336.08(A).

The "[g]ood faith giving of value to a debtor in exchange for a transfer is in the nature of an affirmative defense to a fraudulent transfer claim." *In re Grove-Merritt*, 406 B.R. 778, 810 (Bankr. S.D. Ohio June 2, 2009). Therefore, "[w]here there is a lack of 'reasonably equivalent value' given in exchange, the defendant fails to carry the burden of proof, and intent to defraud the creditor is established." *Blood v. Nofzinger*, 2005-Ohio-3859 at ¶ 50. For the reasons discussed above, there was not an exchange of reasonable equivalent value between Mr. and Mrs. Zovkic. Accordingly, she cannot avail herself of the affirmative defense under R.C. § 1336.08(A) because reasonably equivalent value was not exchanged.

Even if Mrs. Zovkic gave value, she cannot be considered a good-faith transferee. Whether a transferee takes in "good faith" is determined on a case-by-case basis, and

> "[C]ourts look to whether the transferee objectively 'knew or should have known' instead of examining the transferee's actual knowledge from a subjective standpoint. In other words, a transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency."

– 16 –

*In re Grove-Merrit*, 406 B.R. 778, 810 (Bankr. S.D. Ohio June 2, 2009). Mrs. Zovkic signed, as a witness, the *Forbearance Agreement* her then-husband entered into with SMS Financial. (Joint Exhibit 4-6, *Forbearance Agreement*). The agreement stated he owed $1,164,637.14, and she signed it on July 27, 2021. (Joint Exhibit 4-6, 4). She also testified she was aware that all three of her then-husband's restaurants had failed. (TR, p.51 lns. 17–25, p.52 lns. 1–6). Her claimed ignorance as to her former husband's finances lacks credibility. Accordingly, the Court finds that Defendant is not a good faith transferee and cannot avail herself of the defense afforded under R.C. § 1336.08(A).

**Remedy**

Based on this Court's determination that the transfer is avoidable under R.C. § 1336.04(A)(1), Plaintiff is entitled to recover the Debtor's equity in the property in the amount of $88,719.12. Plaintiff is not, however, entitled to the additional relief it requests in the form of a constructive trust. (ECF #1, *Complaint*, p.6 ¶ 45 [PageID #6]). Ohio Revised Code § 1336.07 preserves as a form of relief to remedy a fraudulent transfer, subject to principles of equity, "[a]ny other relief that the circumstances may require." R.C. § 1336.07(A)(3)(c). "Any other relief" includes the imposition of a constructive trust. *In re Bushey*, 210 B.R. 95, 105 (B.A.P. 6th Cir. 1997).

"A constructive trust is an equitable remedy that must be imposed on particular assets, not on a value," and "[t]he party seeking to have a constructive trust imposed bears the burden of proof by clear and convincing evidence." *Dice v. White Family Companies, Inc.*, 2007-Ohio-5755, ¶ 48, 53 (Ohio App. 2d Dist. Oct. 26, 2007). "[B]efore a constructive trust can be imposed, there must be adequate tracing from the time of the wrongful deprivation of the relevant assets to the specific property over which the constructive trust should be placed." Plaintiff has not

identified specific property over which the constructive trust should be placed. Rather, Plaintiff makes broad generalizations to the assets acquired by Mrs. Zovkic from the proceeds of the sale. This is insufficient to prove tracing by clear and convincing evidence. Accordingly, Plaintiff is not entitled to the imposition of a constructive trust.

### Conclusion

Plaintiff has proven five badges of fraud: the transfer was to an insider; Mr. Zovkic was threatened with suit before the transfer; at the time of the transfer, reasonably equivalent value was not exchanged; Mr. Zovkic was insolvent during the transfer; and he retained possession of the property after the transfer. The existence of five badges of fraud is sufficient for the Court to find the transfer fraudulent under R.C. § 1336.04(A)(1). Accordingly, Plaintiff is entitled to judgment against Lisa Zovkic for the amount of her former husband's equity in the property had the transfer not occurred, totaling $88,719.12.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: March 6, 2026